City of Elizabeth v. Force.

THE CITY OF ELIZABETH, appellant,

and

ISABELLA FORCE and others, respondents.

If a negotiable city bond be stolen, and its number be altered by the thief, it will be good in the hands of a subsequent *bona fide* holder who takes it for value.

On appeal from a decree of the vice-chancellor, reported in *Force* v. *City of Elizabeth*, 1 *Stew.* 403.

*Messrs. Chetwood & Williamson*, for appellant.

*Mr. Barker Gummere*, for respondents.

THE CHIEF JUSTICE.

This bill was filed by Mrs. Force to compel the city of Elizabeth to pay to her the money due on two of its negoti-

NOTE.—Corporation bonds, payable to bearer or order, and the coupons annexed thereto, are now recognized as possessing all the ordinary properties of negotiable instruments, notwithstanding some exceptional cases, as *Diamond* v. *Lawrence Co.*, 37 *Pa. St.* 353; *Crosby* v. *New London R. R. Co.*, 26 *Conn.* 121; *Myers* v. *York R. R. Co.*, 43 *Me.* 232;

City of Elizabeth *v.* Force.

able bonds which she had purchased, and which had been stolen from her. One of these bonds was of the denomination of $500, and the other of $1,000. With respect to the former of these instruments, I shall notice it no further than to say that, in my opinion, the questions connected with it were properly disposed of in the court of chancery. But the other bond stands upon quite different ground.

This bond was dated July 1st, 1870, was payable to bearer, with interest due semi-annually, to be drawn on the coupons which were attached to it. It was one of a series of seven, of $1,000 each, numbered from 1,711 to 1,717, and, when the bond in question was stolen, it bore the number 1,711, but, when it was presented for payment, and was paid by the city, its number had been changed to 1,714. It was obvious, from the proofs, that this alteration had been made by the thief, so that he could negotiate the instrument with the less risk. The bond was paid by the city to a *bona fide* holder for value.

It was decided, in the court below, that, notwithstanding such payment, Mrs. Force, the former owner of the bond, was in a position to compel the payment of this money over again. The only reason given in support of this view was, "that the alteration of the number destroyed the bond as a

---

*Jackson* v. *York R. R. Co.*, 48 *Me.* 147; *Clarke* v. *Janesville*, 1 *Biss.* 98, *Miller, J.* And such is the rule established by the recent cases in England. *Gorgier* v. *Mierille*, 3 *B. & C.* 45; *General Estates Co., L. R.* (3 *Ch. App.*) 758; *Imperial Land Co., L. R.* (11 *Eq.*) 478; *Hercules Ins. Co., L. R.* (19 *Eq.*) 302; *Goodwin* v. *Robarts, L. R.* (1 *App. Cas.*) 476. See *Crouch* v. *Credit Foncier, L. R.* (8 *Q. B.*) 374.

Such bonds or coupons, although stolen, are collectible in the hands of a *bona fide* holder, who took them for value, in the usual course of business, before maturity and without notice. *Carpenter* v. *Rommel*, 5 *Phila.* (*Pa.*) 34; *Consolidated Ass'n* v. *Numa Avegno*, 28 *La. An.* 552; *Gilborough* v. *Norfolk R. R. Co.*, 1 *Hughes* 410; *Seybell* v. *Nat. Currency Bank*, 2 *Daly* (*N. Y.*) 383, 54 *N. Y.* 288; *Evertson* v. *Nat. Bank of Newport*, 66 *N. Y.* 14; *California* v. *Wells*, 15 *Cal.* 336; *Spooner* v. *Holmes*, 102 *Mass.* 503.

If, however, the instrument is incomplete, as if any essential part is in blank, and is afterwards filled up by the thief, or holder through the thief, no recovery can be had. In *Ledwich* v. *McKim*, 53 *N. Y.* 307, the place of payment was left in blank, and, before it was filled up by

City of Elizabeth *v.* Force.

means of legal proof, not only in favor of the person who made it, but of any subsequent holder who must trace his title to him." But this conclusion, I am constrained to think, is erroneous, and the fallacy has arisen, it would seem, from considering the thief, in some degree, as a holder, in a legal sense, of the instrument in question. But this is plainly not so, the thief having no interest in the bond in any degree whatever, so that his act in altering the number was the act of a mere spoliator. This becomes perfectly clear if we imagine the circumstance of the bond being recovered by Mrs. Force from the thief, after its alteration and before its payment—Could it be pretended, according to the law as it is settled in this state and in this country, that, in such a situation, she would have been debarred from recovering the money due on the instrument? The legal rule is entirely established that an alteration of an instrument, made by a stranger, without the knowledge or consent of the owner, will not affect the rights of the latter under it; and, by force of such rule, it is undeniable that Mrs. Force, notwithstanding the change in the number of that bond, if it had come back to her before its payment, could have enforced it by an action at law. Such being the case, it seems to follow, as the necessary result of legal principles, that the *bona fide* holder for

the president, the bonds were stolen.—*Held*, that a *bona fide* holder could not, by inserting the name of a place in the blank, recover. In *Jackson* v. *Vicksburg Co.*, 2 *Woods* 141, on precisely similar facts, the same result was reached. In *Maas* v. *Missouri R. R. Co.*, 11 *Hun* (*N. Y.*) 8, the corporate seal of the obligors and the endorsement of the trustee, were both wanting when the bonds were stolen; subsequently these were forged, and then the bonds came into plaintiff's hands.— *Held*, that the company was not liable.

*Query.* Whether a seal is requisite. It is not to the coupon of a county bond. *Ring* v. *County*, 6 *Iowa* 265. Nor, it seems, to the bond itself. *People* v. *Mead*, 24 *N. Y.* 114; 2 *Dan. Neg. Inst.*, § 1495. See *Porter* v. *Androscoggin R. R. Co.*, 37 *Me.* 349; *Regents* v. *Detroit*, 12 *Mich.* 138; *Crouch* v. *Credit Foncier*, *L. R.* (8 *Q. B.*) 374; *Mercer County* v. *Hacket*, 1 *Wall.* 83; *Steamboat* v. *Shaw*, 2 *Greene* (*Ia.*) 91; *Chilton* v. *People*, 66 *Ill.* 501; *Stevens* v. *Allmen*, 19 *Ohio St.* 485; *State* v. *Thompson*, 49 *Mo.* 188.

As a bond takes effect from its delivery, it is presumed that a blank in the date would not affect a recovery. *Pierce* v. *Richardson*, 37 *N. H.*

value of such instrument must stand on the same vantage ground. Such holder does not, in legal contemplation, derive his title from the thief; if he did, such title would be worthless indeed, and it would not be necessary, in order to make it so, to resort to the fact that the thief had vitiated the bond by its alteration. In 2 *Parsons on Bills and Notes,* it is said: " The *bona fide* assignee for value of lost or stolen negotiable notes and checks, has a valid and complete title in them, even though his transferrer had no title whatever."

It is clear that the thief in this case had no rights in the instrument, and could transmit none. But the holder in good faith does not claim to be invested with any transmitted right; the bond being payable to bearer, he claims by force of the direct promise of the city made to himself. The consequence is that he can no more be affected by the act of a spoliator, in altering the instrument for which he has honestly paid value, than can be any person holding a title antecedent to such alteration.

Any decision in this case exploding the defence here interposed, would, it appears to me, be greatly inconsistent with the legal principle that gives untrammeled negotia-

306; *Fournier* v. *Cyr,* 64 *Me.* 32; *Whiting* v. *Daniel,* 1 *Hen. & Mun.* (*Va.*) 391; *Adsetts* v. *Hives,* 33 *Beav.* 52; *Bills* v. *Stanton,* 69 *Ill.* 51.

The thief's insertion of the name of a payee in the blank left for that purpose, is not such an alteration as will avoid the bond. *Boyd* v. *Kennedy,* 9 *Vr.* 146; *Dutchess Co. Ins. Co.* v. *Hachfield,* 1 *Hun* (*N. Y.*) 675. For the fact of the bond not being payable to a particular person, does not render it non-negotiable (*Smith* v. *County,* 54 *Mo.* 58); and the same rule applies to a coupon (*McCoy* v. *Washington Co.,* 3 *Wall. Jr.* 381); but see *Evertson* v. *Nat. Bank of Newport,* 66 *N. Y.* 14, 21, qualifying these cases, and *Clarke* v. *Janesville,* 1 *Biss.* 98, 103.

In an ordinary bond an obligee is as essential as an obligor. *Pelham* v. *Grigg,* 4 *Ark.* 141; *Phelps* v. *Call,* 7 *Ired.* (*N. C.*) 262; *Marsh* v. *Brooks,* 11 *Ired.* (*N. C.*) 409; *Kemp* v. *McGuigan, Tapp.* (*Ohio*) 50. See *Boyd* v. *Kennedy,* 9 *Vr.* 146, 149; *Gray* v. *Rumph,* 2 *Hill* (*S. C.*) *Ch.* 6; *McCown* v. *Wheeler,* 20 *Tex.* 372; *Van Amringe* v. *Morton,* 4 *Whart.* (*Pa.*) 382; *Coles* v. *Hulme,* 8 *B. & C.* 568, 574, *note* (*a*); *Giles* v. *Halsted,* 4 *Zab.* 366.

If *overdue* bonds or coupons are stolen, and then come into a *bona fide* holder's hands, he cannot collect their amount. *Arents* v. *Com.* 18 *Gratt.* (*Va.*) 750; *First Nat. Bank* v. *County Com'rs,* 14 *Minn.* 77; *Belo* v.

bility to instruments of this kind. The case presented is the strongest possible in favor of the city. No question of negligence in its making the payment in question is at all pertinent, for, if the agents of the city had been aware, when they made such payment, that the bond had been both stolen and altered, they could not have refused to redeem it, as it was then held by an innocent purchaser. The alteration itself was in an immaterial particular, as the number on a bond is no part of it. Such has always been the common law doctrine, for, even in an indictment, it was not necessary, although the case called for an insertion in the pleading of an exact copy of the instrument, to include the figures or numbers upon the paper, and which were extrinsic of the body of such instrument. The number of the bond is put upon it as a mark denoting, for the convenience and protection of the maker, that it is one of a series, but such mark does not enter into or in anywise affect the agreement embodied in it; the purchaser has nothing to do with it, and need give it no heed. To lay down the broad doctrine (and this must be done if this decree be sustained) that an alteration in such an incidental and unessential characteristic as this, by a person possessed

---

*Forsythe,* 76 *N. C.* 489; *Vermilye* v. *Adams Ex. Co.,* 21 *Wall.* 138. See *Union Bank* v. *New Orleans,* 14 *Am. Law Reg.* 555.

In *Evertson* v. *Nat. Bank of Newport,* 66 *N. Y.* 14, coupons were held to be entitled to three days' grace, so that a purchaser after the time specified for payment, but before the expiration of the days of grace, was deemed a purchaser before maturity. *See Bowen* v. *Newell,* 8 *N. Y.* 190. In *Arents* v. *Com.,* 18 *Gratt.* (*Va.*) 750, such coupons were held not entitled to grace.

The fact that a holder of debentures purchased them after the company passed a resolution to wind up, will not affect his rights. *Imperial Land Co., L. R.* (11 *Eq.*) 478.

That the real owner gave immediate notice of the theft, by publication, will not of itself deprive the holder of his right to recover. *Seybell* v. *Nat. Currency Bank,* 2 *Daly* 383, 54 *N. Y.* 288; *Murray* v. *Lardner,* 2 *Wall.* 710. But, after actual service of such notice, bankers and brokers should retain a memorandum in order to identify stolen bonds, etc., if presented. *Vermilye* v. *Adams Ex. Co.,* 21 *Wall.* 138. Mere omission to look for such notice twelve months after publication, is no proof of *mala fides. Raphael* v. *Bank of England,* 17 *C. B.* 161. Whether evidence of defend-

City of Elizabeth v. Force.

of no legal title to the instrument, will have the effect of annulling such instrument in the hands of a *bona fide* holder who has purchased and paid for it in the ordinary course of trade, would be to imperil all persons dealing in this species of property. I am very clear that the true principle should be, that the holder of a negotiable instrument should bear no risk arising from antecedent alterations of it, except with respect to such as have been made by a prior legal holder; and against the existence of any such imperfections in his title he has a sufficient guarantee in that common prudence that, for the most part, deters men from doing an act destructive of their own rights; whereas, if he is to be held answerable for the acts of persons having no legal interest in the instrument, no safeguard whatever is provided in the nature of the transaction.

The only judicial determinations upon this subject that I have found, are two, and they both are authorities for the conclusion above expressed. The first of these is *Berdsell'* v. *Russell*, 29 *N. Y.* 220, the points decided being, that the numbers of bonds' are not an integral part of them, and that it would be an unjust presumption to assume that a change in

ant's custom to disregard such notices, together with the magnitude of their business, constitutes *mala fides*, is a question for the jury. *Seybell* v. *Nat. Currency Bank, ubi supra.*

The case of *Texira* v. *Evans*, 1 *Anstr.* 228, in which Lord Mansfield held that an agent might, under a parol authority, fill in blanks in a deed, has been overruled in England and in some of the American states, although followed in many others.

In an elaborate note to *Preston* v. *Hull*, (23 *Gratt.* (*Va.*) 600) in 21 *Am. Law Reg.* 699, 711, nearly all of the American cases are collected, and the impossibility of any attempt to reconcile them shown.

Some additional cases, principally later ones, are here annexed. Those following the rule in *Texira* v. *Evans*, are: *Boyd* v. *Kennedy*, 9 *Vr.* 146; *White* v. *Vermont R. R. Co.* 21 *How.* 575, 578; *Manning* v. *Norwood*, 1 *Ala.* (*N. S.*) 429; *Vliet* v. *Camp*, 13 *Wis.* 198; *Van Etta* v. *Everson*, 28 *Wis.* 33; *Spencer* v. *Buchanan, Wright* (*O.*) 583; *Franklin Bank* v. *Columbus, Id.* 741; *Kelly* v. *State*, 25 *Ohio St.* 567; *Johnson* v. *Johnson*, 31 *Ohio St.* —— ; *Bartlett* v. *Board, &c.*, 59 *Ill.* 364; *State* v. *Dean*, 40 *Mo.* 464; *McCown* v. *Wheeler*, 20 *Tex.* 372; *Viser* v. *Rice*, 33 *Tex.* 139; *Bank of Com.* v. *McChord*, 4 *Dana* (*Ky.*) 191; *Coster's Appeal*, 13 *Pa. St.* 292; *Hultz* v. *Com.,* 3 *Grant's Cas.* (*Pa.*) 61; *Thompson* v. *Williams*, 1 *Fla.* 56; *State* v. *Pepper,*

City of Elizabeth *v.* Force.

the mere numbering of a negotiable bond, offered for sale in the usual course, would, as a matter of law, operate as notice, or as any intimation, of the larceny of it.   The other case is that of *Commonwealth* v. *Emigrant Industrial Savings Bank*, 98 *Mass.* 12, and facts essentially similar to those now under consideration gave occasion for the discussion of precisely the same legal questions with which we are now concerned.   Five stolen negotiable bonds had been taken for value, in the usual course of business, by the Emigrant Industrial Savings Bank, without notice, express or implied, of any defect in the title.   The numbers of these bonds had been altered by the thief; and the questions considered were, whether such alteration was material, and whether it affected the title of the bank, and they were both resolved in favor of the *bona fide* holder of the instruments.   This case was evidently regarded as one of importance, and was carefully considered.

With respect to the bond for $1,000, the decree should be reversed, and neither party be allowed costs in this court.

Decree unanimously reversed.

---

31 *Ind.* 76; *Wild Cat Branch* v. *Ball*, 45 *Ind.* 213; *Hunt* v. *State*, 53 *Ind.* 321.

Those overruling *Texira* v. *Evans* are: *Wynne* v. *Governor*, 1 *Yerg.* (*Tenn.*) 149; *Gilbert* v. *Antony*, *Id.* 69; *Cain* v. *Heard*, 1 *Cold.* (*Tenn.*) 163; *Drumright* v. *Philpot*, 16 *Ga.* 424; *Ingraham* v. *Edwards*, 64 *Ill.* 526; *Ayres* v. *Probasco*, 14 *Kan.* 175; *Canal St. R. R.* v. *Armstrong*, 27 *Ia. An.* 433; *Kims* v. *Brooks*, 9 *Ired.* (*N. C.*) 218; *Marsh* v. *Brooks*, 11 *Ired.* (*N. C.*) 409; *Bland* v. *O'Hagan*, 64 *N. C.* 471; *Barden* v. *Southerland*, 70 *N. C.* 528; *Penn* v. *Hamlett*, 27 *Gratt.* (*Va.*) 337; *Newlin* v. *Beard*, 6 *W. Va.* 110.

Compare, also, *Matson* v. *Booth*, 5 *M. & S.* 223; *Adsetts* v. *Hives*, 33 *Beav.* 52; *Arrington* v. *Burton*, 19 *Ala.* 114; *Boyd* v. *Boyd*, 2 *N. & M.* (*S. C.*) 125; *Jordan* v. *Nelson*, 2 *Wash.* (*Va.*) 164; *Decker's Case*, 6 *Cow.* (*N. Y.*) 59; *Van Amringe* v. *Morton*, 4 *Whart.* (*Pa.*) 382; *United States* v. *Turner*, 2 *Bond* 379.

Whether an alteration apparent on the face of a note is *material* or not, is a question for the court.   *Hill* v. *Calvin*, 4 *How.* (*Miss.*) 231; *Steele* v. *Spencer*, 1 *Pet.* 552; *Stephens* v. *Graham*, 7 *S. & R.* (*Pa.*) 505; *Bowers* v. *Jewell*, 2 *N. H.* 543; see *Taylor* v. *Mosely*, 6 *Car. & P.* 273; *Beaman* v. *Russell*, 20 *Vt.* 205; *Wheelock* v. *Freeman*, 13 *Pick.* (*Mass.*) 165; *Richmond Co.* v. *Davis*, 7 *Blackf.* (*Ind.*) 412; *Ramsey* v. *McCue*, 21 *Gratt.* (*Va.*) 349.—Rep.